IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FINGER OIL & GAS, INC., | § § | |
| *Plaintiff,* | § § | 5-20-CV-00712-RBF |
| vs. | § § | |
| MID-CONTINENT CASUALTY COMPANY; MARSH USA, INC., | § § § § | |
| *Defendants.* | § | |

**ORDER**

This Order concerns the Motions for Summary Judgment filed by Defendants Mid-Continent Casualty Company and Marsh USA, Inc. *See* Dkt. Nos. 35 & 36. This removed diversity case has been assigned for disposition following the parties' consent to U.S. Magistrate jurisdiction. *See* 28 U.S.C. § 636(c); Dkt. Nos. 13-16.

As discussed further below, Marsh's Motion, Dkt. No. 35, is **GRANTED** and all claims by Plaintiff Finger Oil & Gas, Inc. against Marsh are dismissed. Mid-Continent's Motion, Dkt. No. 36, is **GRANTED IN PART** such that all claims by Finger Oil are dismissed except the breach-of-contract claim to the extent it is premised on Mid-Continent's failure to pay costs and expenses for the repair of its well. Summary judgment is granted in all other respects. Finger Oil's remaining claim for negligence isn't at issue because Mid-Continent's motion doesn't address it, but that claim also appears subject to dismissal.

**Factual and Procedural Background**

This dispute relates to insurance benefits purportedly owed to Finger Oil and misrepresentations allegedly made in relation to a commercial general liability policy purchased by Finger Oil from Defendant Mid-Continent. Defendant Marsh brokered the insurance

transaction. The policy purchased by Finger Oil excludes from coverage "property damages" to the following:

> Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property

Dkt. No. 36-2 (Commercial General Liability Policy), **Exclusion j.(1)** under Section I - Coverages, Coverage A. "Bodily Injury" and "Property Damage."

But Finger Oil also purchased an Oil & Gas Endorsement. It purports to "modif[y]" the commercial-liability coverage under the general policy. *See id.* at 4-6. The Endorsement provides, in relevant part, as follows:

### III. UNDERGROUND EQUIPMENT

Unless so indicated below the "Underground Equipment Hazard" is included within the Limit of Insurance.

[X] A. If so indicated, the "Underground Equipment Hazard" is limited to:
    $ 100,000. Aggregate

[ ] B. If so indicated, this insurance does not apply to "Property Damage" included within the "Underground Equipment Hazard".

### IV. BLOW-OUT AND CRATERING

Unless so indicated below, the Blow-out and Cratering of any well is included within the Limit of Insurance.

[ ] If so indicated, this insurance does not apply to "Property Damage" on or above the surface of the earth caused by the blow-out, cratering or loss of control of any well.

### V. EXCLUSIONS

A. Any loss, cost or expense incurred by you or at your request or by or at the request of any "Co-owner of the Working Interest" in connection with controlling or bringing under control any oil, gas or water well.

B. Any loss, cost or expense associated with loss of hole, either temporary or permanent, including, but not limited to, the cost of plugging, replugging or abandoning of any well.

*Id.*

One of Finger Oil's natural glass wells experienced a blow-out. In response, Shelli Finger from Finger Oil contacted the broker, Marsh, and inquired about coverage with commercial-lines manager Desiree Scrimger, although it's unclear whether and to what extent Ms. Finger relayed

2

the details of the blow-out and the type of repairs needed.[1] Unfamiliar with the Endorsement, Scrimger in turn reached out to the insurer, Mid-Continent, requesting that it "confirm that [Finger Oil] has **<u>Blow Out and Cratering coverage</u>** and advise the **<u>limit</u>**." Dkt. No. 36-6 (emphasis in original). In an email dated July 12, 2019, Mid-Continent Vice President and underwriter Edward Scheve provided the following response:

> The policy ML1419 Oil & Gas Endorsement IV Blow-Out and Cratering has a box to X if the coverage is excluded. The ML1419 for this policy is not X'd. The limit for Blow-out and Cratering is included within the CG0001 Commercial General Liability Form, Section III Limits of Insurance.

*Id.* Based on Scheve's representation, Scrimger then emailed Finger as follows:

> Per the underwriting regarding coverage, the Blowout and Cratering are included within the limit of insurance. Limits are $1M occurrence/$2M aggregate.
>
> Please note that each claim is based on its own merit and this is just verifying the coverage in place.

Dkt. No. 36-5. That same day, Finger Oil submitted its claim. Dkt. No. 35-1.

Mid-Continent subsequently assigned Senior Claims Specialist Yolanda Gautier to investigate the claim. Gautier contacted Finger Oil, requesting information concerning the blow-out. In her email, Gautier advised Finger Oil that Mid-Continent "will be reviewing the policy regarding coverage related to this incident." Dkt. No. 36-8. But before the claim could be approved, Finger Oil—allegedly interpreting Scrimger's response as a representation of coverage—retained the services of various contactors to bring the well under control and repair the well in an unspecified manner. *See* Dkt. No. 36-4 at 5 (Pl. Interrog. Resp. No. 6); J. Finger & S. Finger Affs. (Dkt. No. 40-2 at 25-26); Dkt. No. 36-7 (S. Finger statement).

Mid-Continent later denied Finger Oil's claim. In doing so, Mid-Continent cited the policy's general exclusion of property damage in Section I.2.j(1), as well as the Endorsement's

---

[1] According to Ms. Finger, she contacted Scrimger to inquire whether "that work on the blow out and cratering on the well would be covered." S. Finger Aff. (Dkt. No. 40-2).

exclusion of losses or costs incurred to bring a blown-out well under control. *See* Dkt. No. 35-1 at 10-11.

Finger Oil then sued Mid-Continent, Marsh, and Marsh underwriter Karen Olivia in Bexar County state court. Finger Oil raised claims against all Defendants for misrepresentation in violation of § 541.051 of the Texas Insurance Code and § 17.46(b) of the Texas Deceptive Trade Practices Act (DTPA). *See* Dkt. No. 1-5 at 2-6. Additionally, Finger Oil raised claims against Mid-Continent for: (1) violating §§ 542.055 and 542.056 of the Texas Insurance Code by failing to timely investigate and request information necessary to its claim and, further, failure to timely deny its claim; (2) breach of contract; and (3) negligence in determining coverage. Mid-Continent removed the case on diversity grounds, alleging that Defendant Olivia—a Texas citizen—was improperly joined. *See* Dkt. No. 1.[2] Finger Oil thereafter moved to remand. *See* Dkt. No. 8. The District Court denied the Motion to Remand and dismissed Olivia as improperly joined. *See* Dkt. No. 11. This case was then reassigned following the parties' consent to U.S. Magistrate jurisdiction. *See* Dkt. Nos. 13-16.

On October 20, 2020, the Court held an Initial Pretrial Conference. In light of the fraud-type allegations raised by Finger Oil in its Original Petition, the Court ordered Finger Oil at the hearing and in a subsequent written order to file—on or before November 3, 2020—an amended complaint to clarify its factual allegations and conform with federal pleading requirements. *See* Dkt. No. 25. Finger Oil never filed an amended complaint. Marsh and Mid-Continent now move for summary judgment, asserting they are each entitled to judgment as a matter of law on all claims asserted by Finger Oil against them. Dkt. No. 35-36. Alternatively, Marsh contends that Finger Oil's failure to comply with the Court's October 20, 2020, order warrants dismissal. *See* Dkt. No. 35. Finger Oil hasn't responded to Marsh's motion.

---

[2] Mid-Continent subsequently filed an amended notice of removal that properly alleged the parties' citizenship. *See* Dkt. No. 7.

**Analysis**

As discussed further below, Finger Oil's DTPA and Insurance Code claims premised on Mid-Continent and Marsh's alleged misrepresentations are dismissed. Finger Oil failed to file an amended complaint to clarify these fraud-type allegations and ensure compliance with federal pleading standards, notwithstanding the Court's order directing it to do so. Moreover, the summary judgment record reveals no genuine issue of material fact concerning whether either company made any actionable misrepresentation or was under any duty to disclose certain exclusions in the policy and endorsement at issue. Further, there's no evidence that it was any misrepresentation or omission by Mid-Continent or Marsh that caused Finger Oil to incur expenses it would not otherwise have incurred to address the well blow-out.

Finger Oil's breach of contract claim is partially dismissed. The Oil & Gas Endorsement unambiguously includes coverage for blow-outs and cratering but then just as unambiguously excludes coverage for costs related to controlling or bringing under control a blown-out well. Any breach claim premised on such costs is therefore foreclosed as a matter of law. But summary judgment on the remainder of Finger Oil's breach-of-contract claim is denied. There is, however, a contractual limitation on recovery that could limit any such claim's scope.

Further, summary judgment is granted on Finger Oil's Prompt Payment Act claims. There's no evidence—let alone argument from Finger Oil—that Mid-Continent failed to timely acknowledge, deny, or request information reasonably necessary to the claim's investigation.

Finally, although Mid-Continent hasn't moved for summary judgment on Finger Oil's negligence claim, in the interest of judicial efficiency, the Court notes that this claim doesn't appear cognizable under Texas law.

     **A.**    **Finger Oil's Claims Predicated on Defendants' Alleged Misrepresentations Warrant Dismissal.**

        **1**.   *Finger Oil didn't amend its live pleadings to provide greater specificity and detail of its fraud-based allegations*. In its live pleading—a state court Petition—Finger Oil pleads that Defendants "misrepresented the benefits or advantage of the insurance policy in question giving rise to a breach of [Texas Insurance Code § 541.051]" and further engaged in "false, misleading, or deceptive acts" in violation of Section 17.46(b) of the Texas Business and Commerce Code by (1) "[r]epresenting that the insurance policy coverage had characteristics which it did not have"; and (2) "[r]epresenting that the insurance policy in question conferred or involved rights, remedies, or obligations, which it did not have or involve." Dkt. No. 1-5. Such fraud-type allegations must be pled with specificity in federal court. *See* Fed. R. Civ. P. 9(b).[3] Elsewhere in the live pleading, Finger Oil references a communication by Desiree Scrimger in which she related that underwriter Karen Olivia allegedly "confirmed coverage." Dkt. No. 1-5. Because Federal Rule of Civil Procedure 9 requires specificity when making these types of fraud allegations, the Court directed Finger Oil to file an amended complaint to clarify its factual allegations and conform with federal pleading requirements. *See* Dkt. No. 25; *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc*., 975 F.2d 1134, 1139 (5th Cir. 1992) ("At a minimum, Rule 9(b) requires allegations of the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.") (quotations omitted).

    To date, Finger Oil hasn't filed an amended complaint. Nor has Finger Oil responded to Defendant Marsh's contention in its summary judgment motion that dismissal of the fraud-based

---

[3] *See also Kennard Law, P.C. v. Nat'l Fire Ins. Co. of Hartford*, No. 4:20-CV-2534, 2021 WL 2722793, at *1 (S.D. Tex. Jun. 11, 2021), *report and recommendation adopted*, 2021 WL 2712370 (S.D. Tex. Jun. 29, 2021) ("Claims alleging misrepresentations or fraud in violation of the Texas Insurance Code or the Deceptive Trade Practices Act must meet the pleading requirements of Federal Rule of Civil Procedure 9(b).").

claims is warranted for this failure to comply with a Court order. Accordingly, for this failure to respond to a legal contention and comply with a Court order or Federal Rule of Civil Procedure 9(b), dismissal of Finger Oil's DTPA and Chapter 41 claims is warranted. *See* Fed. R. Civ. P. 16(f) (permitting a Court on motion or on its own to issue any "just orders," including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney fails to obey a pretrial order); Fed. R. Civ. P. 41(b); Fed. R. Civ. P. 56(e) (noting possible consequence for failing to respond to a factual contention).

      **2.**    *The fraud-type claims also fail on the merits*. Finger Oil's DTPA and Chapter 541 Insurance Code claims also warrant dismissal on summary judgment. To start, neither Scrimger nor Scheve made an affirmative misrepresentation regarding the scope of Finger Oil's coverage. They each correctly represented that Finger Oil had blow-out and cratering coverage, as provided by the Oil & Gas Endorsement. Such "general claims" of coverage aren't usually actionable under either the DTPA or Texas Insurance Code. *See At'l Cas. Ins. Co. v. PrimeLending*, No. 3:15-CV-1475-D, 2017 WL 951878, at *5 (N.D. Tex. Mar. 10, 2017). Only where an insurer or agent "does more than represent that a policy provides full coverage—such as representing that coverage exists in a specific situation" is the imposition of liability a possibility. *See id.* No such specific representation is indicated in the pleadings or the summary judgment record. Instead, the undisputed evidence reflects that Scrimger specifically advised Finger Oil that "each claim is based on its own merit and this is just verifying the coverage in place." Dkt. No. 36-5.

Finger Oil counters unsuccessfully by arguing that Scrimger and Scheve were legally obligated to disclose the policy's exclusions, especially when verifying the coverage in place. But "[s]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento*, 48

S.W.3d 749, 755 (Tex. 2001). In the absence of a confidential or fiduciary relationship, which Finger Oil doesn't contend exists here, a duty to disclose exists under Texas law where a party makes a partial disclosure that, although true, conveys a false impression. *See id.*; *see also Union Pac. Res. Group, Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001). Here, neither Scrimger or Scheve's recitation of the policy's general terms implied that Finger Oil's particular loss was fully covered or otherwise sufficiently conveyed a false impression to warrant imposition of a duty to disclose. There's no evidence that Finger Oil asked for an evaluation of its specific situation or that one was provided in response to any such inquiry.

And even assuming for argument's sake that either Scrimger or Scheve was obligated to disclose all potential exclusions to Finger Oil's Blow-Out and Cratering coverage, there's no evidence that either Scrimger or Scheve's alleged omissions caused Finger Oil to suffer any damages. For example, Finger Oil doesn't point to any evidence indicating that had Defendants disclosed the exclusions, Finger Oil then wouldn't have incurred all or even some of the costs at issue. Because "both the Insurance Code and the Deceptive Trade Practices Act require proof that the defendant's conduct was the cause in fact of actual damage," and there's no evidence that the non-disclosure caused Finger Oil damages, Finger Oil's claims fail. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 702 (5th Cir. 1999).[4]

### B. Finger Oil's Breach of Contract Claim Survives in Part.

To ultimately recover for breach of contract, Finger Oil—as the insured—has the initial burden of pleading and proving that the Commercial General Liability Policy provided coverage. *See JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). Once general coverage is established, the burden then shifts to Mid-Continent to prove that an

---

[4] Because the Court concludes that neither Scrimger or Scheve made an actionable misrepresentation, the Court need not—and does not—address Mid-Continent's argument that Scrimger didn't have authority to act as its agent.

exclusion applies and negates coverage. *Id.* And if that's the case, the burden then shifts back to Finger Oil to show that an exception to the exclusion brings the claim back into coverage. *Id.*

    **1.**  *Well-control costs aren't recoverable per the Endorsement's plain terms.* Here, the Oil & Gas Endorsement generally includes "the Blow-out and Cratering of any well" within the Limit of Insurance. But this coverage is expressly limited by the Endorsement. In the very next paragraph, the Endorsement clearly and unambiguously excludes from coverage "[a]ny loss, cost or expense . . . in connection with controlling or bringing under control any oil, gas or water well." Dkt. No. 36-2 at 5. Because "insurance policies are contracts subject to the rules of contract construction," this unambiguous provision should be given full effect according to its plain terms that exclude coverage here for bringing the well under control. *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018). Notably, other courts have interpreted nearly identical policy language[5] to reach a similar conclusion. *See, e.g.*, *Tristar Expl.*, *Inc. v. Mid-Continent Cas. Co.* No. 05-06-00811-CV, 2007 WL 1816894, at *2 (Tex. App.—Dallas Jun. 26, 2007, no pet.); *The Travelers Ins. Grp. Inc. v. O.C.S., Inc.*, 914 F.Supp. 126, 132 (E.D. La. 1996).

  And Finger Oil hasn't argued—let alone identified—an exception to the well-control exclusion that could or would bring this category of damages back into coverage. Accordingly, summary judgment on Finger Oil's breach of contract claim is granted insofar as Finger Oil seeks recovery for any losses, costs, or expenses in connection with bringing the well under control. *See JAW The Pointe*, 460 S.W.3d at 603 (discussing an insured's summary judgment burden).

---

[5] *See Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 876 F.3d 119, 128 (5th Cir. 2017) ("To determine the ordinary meaning of a term not defined in the contract, courts typically begin with the dictionary definition. They then consider the term's usage in other authorities, such as prior court decisions.").

**2.** *Well-repair costs are not precluded on summary judgment.* Finger Oil, however, also incurred expenses related to repairing the well itself. The outcome with respect to those costs is different, at least on this record and the arguments presently before the Court.

Pursuant to the Oil & Gas Endorsement, Finger Oil purchased coverage for any damage to the formation, strata, or area in which it worked, as well as coverage for all surface and subsurface property damage from a blow-out. *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 116 & n.10 (5th Cir. 2010) (interpreting identical endorsement language in a Mid-Continent Oil & Gas Endorsement to provide such coverage). Generally, a policy's endorsements "supersede and control over conflicting printed terms within the main policy." *Id.* at 115 (quotations omitted). Courts, however, will construe the main-policy and endorsement provisions together, "unless doing so would negate or render superfluous the additional coverage afforded in the endorsement." *Id.* (quotations omitted). Notably, although the Fifth Circuit addressed and interpreted in *Mid-Continent Cas. Co. v. Bay Rock Operating Co.* language identical to the language at issue here, Mid-Continent doesn't argue that applying the general exclusion of property damage found in Section I.2.j(1) could or would be consistent with the Oil & Gas Endorsement. It instead invokes only the exclusion in the general policy while essentially ignoring the Endorsement. *See* Dkt. No. 36 at 18.

Applying Exclusion j.(1) from the main policy in preference to the Endorsement would undermine much the additional coverage provided by the Endorsement. *See Bay Rock Operating Co.*, 614 F.3d at 116 (exclusion in main policy was superseded by the oil-and-gas endorsement because application of the exclusion would cause an irreconcilable conflict between the exclusion and the additional coverage purchased). Indeed, under Mid-Continent's reading of the policy, it's unclear what benefit—other than payment of state or federally mandated clean-up costs—the Oil & Gas Endorsement would provide an insured like Finger Oil.

10

Accordingly, summary judgment on Finger Oil's breach of contract claim—to the extent it rests on Mid-Continent's failure to cover well repair costs and expenses—is denied on this record and the arguments presently before the Court. It bears mention that a well-repair claim appears to be limited to $100,000 pursuant to Section III of the Endorsement, although the Court does not purport to address or resolve that issue at this time.

    **C.**    **Finger Oil's Chapter 542 Claims Are Dismissed.**

Finger Oil fails to show a triable fact issue in connection with whether Mid-Continent violated Chapter 542 of the Texas Insurance Code. Notably, Finger Oil doesn't plead that Mid-Continent failed to promptly pay its claim. *Cf.* Tex. Ins. Code § 542.058(a). Rather, Finger Oil's Chapter 542 claims concern the timing of Mid-Continent's investigation and claim denial, and whether Mid-Continent requested all information reasonably necessary to investigate Finger Oil's claims.

Section 542.055(a) of the Texas Insurance Code provides in relevant part: "Not later than the 15th day . . . the insurer shall: (1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." Section 542.056 provides that "an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss."

The record reflects that Mid-Continent's claims specialist contacted Finger Oil on July 15, 2019—three days after Finger Oil submitted its claim—requesting "contact information for the pertinent parties involved, as well as copies of any photos, contracts, video, reports, etc. . . . for [Mid-Continent's] review." Dkt. No. 36-8. Mid-Continent then rejected Finger Oil's claim a little less than five months later, on December 2, 2019. *See* Dkt. No. 35-1 at 10-11. Accordingly,

there's no genuine issue of material fact that Mid-Continent timely acknowledged and commenced its investigation of Finger Oil's claim. And, Finger Oil hasn't alleged pointed to any genuine issue of material fact concerning whether Mid-Continent failed to request pertinent information relevant to its claim or timely reject its claim. Accordingly, summary judgment is granted on Finger Oil's Chapter 542 claims.

### D.     Finger Oil's Negligence Claim Has No Basis in Law.

Finally, Finger Oil summarily pleads that Mid-Continent was "negligent in determining coverage under the policy in question, which negligence was a proximate cause of [Finger Oil's] damages." Orig. Pet. Although Mid-Continent hasn't moved for summary judgment on Finger Oil's negligence claim, in the interest of judicial efficiency, it bears mention that in Texas there's no independent cause of action against an insurer for negligent handling of claims. *See Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 352 (5th Cir. 2001) (noting Texas law does not recognize a cause of action for negligent claims handling and citing *Higginbotham*, 103 F.3d at 460); *see also Zimmerman v. Travelers Lloyds of Tex. Ins. Co.*, No. 5:15-CV-325, 2015 WL 3971415, at *5 (W.D. Tex. Jun. 30, 2015). Accordingly, it appears that Finger Oil's negligence claim is also subject to dismissal.

### Conclusion

For the reasons discussed above, **IT IS ORDERED THAT** Marsh's Motion, Dkt. No. 35, is **GRANTED** and all claims by Plaintiff Finger Oil & Gas, Inc. against Marsh are dismissed. Mid-Continent's Motion, Dkt. No. 36, is **GRANTED IN PART** in that summary judgment is granted in its entirety save for Finger Oil's breach of contract claim premised on Mid-Continent's failure to pay the costs and expenses related to the repair of Finger Oil's well.

Finally, although the Court won't formally dismiss Finger Oil's negligence claim, that claim also appears subject to dismissal. The parties are therefore **ORDERED** to confer regarding

the negligence claim and to then file a joint advisory, within **14 days** from the date of this order, indicating their respective positions regarding whether this claim ought to proceed and, if it should not proceed, how the Court should dismiss it. The parties are also **ORDERED** to confer regarding the remainder of the case. In their advisory, the parties should advise the Court concerning whether they are ready to proceed to trial or seek an opportunity to resolve their dispute through other avenues, like mediation. A proposed timeline for any next steps should be provided by the parties to the Court, which the Court will do its best to accommodate.

**IT IS SO ORDERED**.

SIGNED this 20th day of October, 2021.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE