IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FINGER OIL & GAS, INC., | § | |
| | § | |
| *Plaintiff,* | § | 5-20-CV-00712-RBF |
| | § | |
| vs. | § | |
| | § | |
| MID-CONTINENT CASUALTY | § | |
| COMPANY AND MARSH USA, INC.; | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

This Order concerns the Motions for Reconsideration filed by Plaintiff Finger Oil & Gas, Inc., Dkt. No. 53, and Defendant Mid-Continent Casualty Company, Dkt. No. 51. This removed diversity case has been assigned for disposition following the parties' consent to U.S. Magistrate jurisdiction. *See* 28 U.S.C. § 636(c); Dkt. Nos. 13-16.

As discussed further below, Mid-Continent's Motion, Dkt. No. 51, is **GRANTED**. The Court hereby **MODIFIES** its October 20, 2021, Summary Judgment Order, Dkt. No. 45, to grant Mid-Continent summary judgment on Finger Oil's remaining breach-of-contract claim, which is premised on Mid-Continent's failure to pay costs and expenses for the repair of Finger Oil's well. The Court also exercises its discretion to *sua sponte* grant summary judgment on Finger Oil's negligence claim, now that Finger Oil has had an opportunity to brief the issue. Finger Oil's Motion, Dkt. No. 53, is **DENIED**. Except as provided herein, the Court re-affirms its October 20, 2021, Summary Judgment Order in all other respects.

### Factual and Procedural Background

This dispute relates to insurance benefits purportedly owed to Finger Oil and misrepresentations allegedly made in relation to a commercial general liability policy purchased

by Finger Oil from Defendant Mid-Continent. Defendant Marsh brokered the insurance transaction. The policy purchased by Finger Oil generally covers "sums that the insured [Finger Oil] *becomes legally obligated to pay* as damages because of 'bodily injury' or 'property damage.'" Dkt. No. 36-2 (Commercial General Liability Policy) Section I-Coverages, Coverage A—Bodily Injury and Property Damage Liability. 1. Insuring Agreement (emphasis added). In furtherance thereof, the policy contains an "owned property" exclusion, which excludes from coverage "property damage" to the following:

> Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

*Id.*, Section I.2.j(1).

Finger Oil also purchased an Oil & Gas Endorsement. *See id.* at 4-6. The Endorsement provides, in relevant part, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

. . .

**II.   UNDERGROUND RESOURCES**

Unless so indicated below the "Underground Resources Hazard" is included within the Limit of Insurance.

☐   **A.**   If so indicated, the   "Underground Resources Hazard" is limited to:
  $ _____   Aggregate

☐   **B.**   If so indicated, this insurance does not apply to "Property Damage" included within the "Underground Resources Hazard".

2

**III.   UNDERGROUND EQUIPMENT**

Unless so indicated below the "Underground Equipment Hazard" is included within the Limit of Insurance.

[X] A.   If so indicated, the   "Underground Equipment Hazard" is limited to:

   **$   100,000.**              Aggregate

[ ] B.   If so indicated, this insurance does not apply to "Property Damage" included within the "Underground Equipment Hazard".

**IV.   BLOW-OUT AND CRATERING**

Unless so indicated below, the Blow-out and Cratering of any well is included within the Limit of Insurance.

[ ]      If so indicated, this insurance does not apply to "Property Damage" on or above the surface of the earth caused by the blow-out, cratering or loss of control of any well.

**V.   EXCLUSIONS**

A.   Any loss, cost or expense incurred by you or at your request or by or at the request of any "Co-owner of the Working Interest" in connection with controlling or bringing under control any oil, gas or water well.

B.   Any loss, cost or expense associated with loss of hole, either temporary or permanent, including, but not limited to, the cost of plugging, replugging or abandoning of any well.

*Id.* An "Underground Equipment Hazard" and an "Underground Resources Hazard" are defined as follows:

D.   "Underground Equipment Hazard" includes "Property Damage" to any casing, pipe, bit, or tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water in which you have a legal liability. **Exclusion j. (4)** under **Section I - Coverages, Coverage A. "Bodily Injury" and "Property Damage"** does not apply to this hazard.

E.   "Underground Resources Hazard" includes "Property Damage" to:

   (1)   Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water; or

   (2)   Any formation strata or area in or through which exploration for or production of any substance is carried on.

. . .

The bottom of the Endorsement provides that "[a]ll other terms, conditions and exclusions [in the main policy] remain unchanged." *Id.*

One of Finger Oil's natural glass wells experienced a blow-out. In response, Shelli Finger from Finger Oil contacted the broker, Marsh, and inquired about coverage with commercial-lines manager Desiree Scrimger, although it's unclear whether and to what extent Ms. Finger relayed

the details of the blow-out and the type of repairs needed.[1] Unfamiliar with the Endorsement, Scrimger in turn reached out to the insurer, Mid-Continent, requesting that it "confirm that [Finger Oil] has **Blow Out and Cratering coverage** and advise the **limit**." Dkt. No. 36-6 (emphasis in original). In an email dated July 12, 2019, Mid-Continent Vice President and underwriter Edward Scheve provided the following response:

> The policy ML1419 Oil & Gas Endorsement IV Blow-Out and Cratering has a box to X if the coverage is excluded. The ML1419 for this policy is not X'd. The limit for Blow-out and Cratering is included within the CG0001 Commercial General Liability Form, Section III Limits of Insurance.

*Id.* Based on Scheve's representation, Scrimger then emailed Finger as follows:

> Per the underwriting regarding coverage, the Blowout and Cratering are included within the limit of insurance. Limits are $1M occurrence/$2M aggregate.

> Please note that each claim is based on its own merit and this is just verifying the coverage in place.

Dkt. No. 36-5. That same day, Finger Oil submitted its claim. Dkt. No. 35-1.

Mid-Continent subsequently assigned Senior Claims Specialist Yolanda Gautier to investigate the claim. Gautier contacted Finger Oil, requesting information concerning the blow-out. In her email, Gautier advised Finger Oil that Mid-Continent "will be reviewing the policy regarding coverage related to this incident." Dkt. No. 36-8. But before the claim could be approved, Finger Oil—allegedly interpreting Scrimger's response as a representation of coverage—retained the services of various contactors to bring the well under control and repair the well in an unspecified manner. *See* Dkt. No. 36-4 at 5 (Pl. Interrog. Resp. No. 6); J. Finger & S. Finger Affs. (Dkt. No. 40-2 at 25-26); Dkt. No. 36-7 (S. Finger statement).

---

[1] According to Ms. Finger, she contacted Scrimger to inquire whether "that work on the blow out and cratering on the well would be covered." S. Finger Aff. (Dkt. No. 40-2).

Mid-Continent later denied Finger Oil's claim. In doing so, Mid-Continent cited the policy's general exclusion of property damage in Section I.2.j(1), as well as the Endorsement's exclusion of losses or costs incurred to bring a blown-out well under control. *See* Dkt. No. 35-1 at 10-11.

Finger Oil then sued Mid-Continent, Marsh, and Marsh underwriter Karen Olivia in Bexar County state court. Finger Oil raised claims against all Defendants for misrepresentation in violation of § 541.051 of the Texas Insurance Code and § 17.46(b) of the Texas Deceptive Trade Practices Act (DTPA). *See* Dkt. No. 1-5 at 2-6. Additionally, Finger Oil raised claims against Mid-Continent for: (1) violating §§ 542.055 and 542.056 of the Texas Insurance Code by failing to timely investigate and request information necessary to its claim and, further, failure to timely deny its claim; (2) breach of contract for failing to cover Finger Oil's costs associated with bringing its well under control and repairing the well; and (3) negligence in determining coverage. Mid-Continent removed the case on diversity grounds, alleging that Defendant Olivia—a Texas citizen—was improperly joined. *See* Dkt. No. 1.[2] Finger Oil thereafter moved to remand. *See* Dkt. No. 8. The District Court denied the Motion to Remand and dismissed Olivia as improperly joined. *See* Dkt. No. 11. This case was then reassigned following the parties' consent to U.S. Magistrate jurisdiction. *See* Dkt. Nos. 13-16.

On October 20, 2020, the Court held an Initial Pretrial Conference. In light of the fraud-type allegations raised by Finger Oil in its Original Petition, the Court ordered Finger Oil at the hearing and in a subsequent written order to file—on or before November 3, 2020—an amended complaint to clarify its factual allegations and conform with federal pleading requirements. *See* Dkt. No. 25. Finger Oil failed to timely file an amended complaint.

---

[2] Mid-Continent subsequently filed an amended notice of removal that properly alleged the parties' citizenship. *See* Dkt. No. 7.

Marsh and Mid-Continent subsequently moved for summary judgment, asserting they are each entitled to judgment as a matter of law on all claims asserted by Finger Oil against them. Dkt. No. 35-36. Alternatively, Marsh contended that Finger Oil's failure to comply with the Court's October 20, 2020, order warranted dismissal. *See* Dkt. No. 35. Finger Oil didn't respond to Marsh's motion.

On October 20, 2021, the Court granted Marsh's motion for summary judgment in full and granted in part Mid-Continent's motion. *See* Dkt. No. 45. Specifically, the Court dismissed Finger Oil's DTPA and Insurance Code claims against both Defendants. The Court premised this dismissal, first, on Finger Oil's failure to properly plead its fraud-type allegations in accordance with Federal Rule of Civil Procedure 9(b) and the Court's prior directive and, second, because the summary judgment record reveals no genuine issue of material fact concerning whether either company made any actionable misrepresentation or was under any duty to disclose certain exclusions in the policy and endorsement at issue. The Court also granted Mid-Continent's motion for summary judgment on Finger Oil's Prompt Payment Act claims and the portion of Finger Oil's breach-of-contract claim related to Mid-Continent's failure to cover costs related to bringing Finger Oil's well under control.

The Court, however, denied summary judgment on Finger Oil's breach-of-contract claim premised on Mid-Continent's failure to pay costs related to the well repair. In doing so, the Court reasoned that applying Exclusion j.(1) from the main policy in preference to the Endorsement appeared to undermine much of the additional coverage provided by the Endorsement. Accordingly, based on the record and arguments presented at the time, the Court denied summary judgment on Finger Oil's breach-of-contract claim—to the extent it rested on Mid-Continent's failure to cover well-repair costs and expenses. Finally, although Mid-Continent

hadn't moved for summary judgment on Finger Oil's negligence claim, the Court in the interest of judicial efficiency noted that the claim "doesn't appear cognizable under Texas law." The Court ordered the parties to confer regarding whether the claim ought to proceed.

On October 21, 2021—one day after the Court issued its Summary Judgment Order—Finger Oil requested leave to file an amended complaint. *See* Dkt. No. 46. The Court denied the motion. Finger Oil didn't present good cause for amending its complaint nearly a year after the Court ordered amendment and months after Defendant Marsh pointed out this failure in its June 2021 summary judgment motion. *See* Nov. 10, 2021 text order (citing Fed. R. Civ. P. 16(b), (f); 41(b); 56(e)). In any event, amendment was moot given that the Court had already granted summary judgment on the fraud-type claims Finger Oil sought leave to amend. *See id.*

Mid-Continent and Finger Oil now each move for reconsideration of the Court's October 20, 2021, Summary Judgment Order. *See* Dkt. Nos. 51 & 53. Mid-Continent moves for reconsideration of the Court's denial of its motion for summary judgment on Finger Oil's breach-of-contract claim to the extent the claim is premised on Mid-Continent's failure to pay Finger Oil's well-repair costs. *See* Dkt. No. 51. Finger Oil moves for reconsideration of the portion of the Court's order granting summary judgment on its DTPA and Insurance Code claims premised on Mid-Continent's alleged misrepresentations.[3] *See* Dkt. No. 53. Finger Oil also appears to request reconsideration of the Court's grant of partial summary judgment on the portion of its breach-of-contract claim seeking recovery for costs incurred in bringing its well under control. *See id.*

On December 2, 2021, the Court held a hearing on the motions at which all parties appeared through counsel of record. At the conclusion of the hearing, the Court provided the

---

[3] Finger Oil doesn't appear to dispute the Court's grant of summary judgment in favor of Defendant Marsh on these claims.

parties an opportunity to file supplemental briefing to address (1) Mid-Continent's argument, which it raised for the first time at the hearing, that the policy—as a general liability policy— doesn't provide coverage to Finger Oil's well-repair claim; and (2) the viability of Finger Oil's negligence claim. The parties timely filed their supplemental briefs. *See* Dkt. Nos. 55, 57-61.

## Analysis

Mid-Continent's motion for reconsideration is granted. Pursuant to Federal Rule of Civil Procedure 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam).[4] A further review of the policy, coupled with Mid-Continent's arguments from the December 21 hearing and supplemental briefing, reveals that Mid-Continent only provided third-party liability coverage to Finger Oil. The Oil & Gas Endorsement expands the policy's third-party liability coverage but it doesn't add coverage for damages incurred on property owned by Finger Oil. Accordingly, Finger Oil's well-repair costs are excluded from coverage, and the Court modifies its October 20, 2021 Summary Judgment Order to grant Mid-Continent summary judgment on the entirety of Finger Oil's breach-of-contract claim.

Summary judgment is similarly granted on Finger Oil's negligence claim. Although Mid-Continent's original motion doesn't address this claim, the Court raised the issue *sua sponte* both in the Summary Judgment Order and at the hearing on the motions for reconsideration. And the Court provided Finger Oil an opportunity to address the claim's viability. Finger Oil hasn't presented any basis to permit its negligence claim, as pleaded, to proceed. Finally, reconsideration isn't warranted on any of the grounds raised by Finger Oil.

---

[4] Contrary to Mid-Continent's representations, Federal Rule of Civil Procedure 60 doesn't apply where, like here, the parties seek reconsideration of an interlocutory order.

### A.   Judgment as a Matter of Law is Granted on the Entirety of Finger Oil's Breach-of-Contract Claim.

As discussed in the October 20, 2021, Summary Judgment Order, the Endorsement unambiguously includes coverage for blow-outs and cratering but then just as unambiguously excludes coverage for costs related to controlling or bringing under control a blown-out well. Any breach claim premised on such costs, the Court explained, is foreclosed as a matter of law. *See* Dkt. No. 45 at 5, 9. Finger Oil hasn't presented any basis for the Court to deny full effect to this provision. Accordingly, the Court reaffirms the portion of the Summary Judgment Order finding that Finger Oil can't recover well-control costs. But reconsideration is warranted with respect to the Court's refusal to grant summary judgment on Finger Oil's claim that Mid-Continent breached the contract by refusing to pay for Finger Oil's well-repair costs.

As mentioned, the policy purchased by Finger Oil generally covers "sums that the insured [Finger Oil] becomes *legally obligated to pay* as damages because of 'bodily injury' or 'property damage.'" Dkt. No. 36-2 (Commercial General Liability Policy) Section I-Coverages, Coverage A—Bodily Injury and Property Damage Liability. 1. Insuring Agreement (emphasis added). The so-called "owned-property exclusion" at Exclusion j.(1) reinforces the policy's intention that the insurance purchased by Finger Oil only provides third-party liability coverage—*i.e.*, coverage for property not owned or controlled by Finger Oil. *See Eagle Water, L.L.C. v. Ash*, 778 Fed. App'x 304, 305 n.1. (5th Cir. 2019)  ("The purpose of owned property exclusions in general liability policies is to effectuate the intent that liability insurance is designed to provide compensation for damages to property not owned or controlled by the insured. It does not provide first party

coverage for losses sustained by the insured on its own property.") (quotations omitted).[5]

It's undisputed that Finger Oil seeks to recover damages to its own well—damages it is not legally obligated to pay. In other words, Finger Oil seeks first-party coverage, which is not provided by the main policy. *See, e.g.*, *Great Am. Ins. Co. v. Jim Stephensom Motor Co*., No. 05-94-00858-CV, 1996 WL 135688, at *5 (Tex. App.—Dallas Mar. 26, 1996, writ denied) (explaining that first-party insurance covers an insured's own property while third-party insurance protects the insured against liability arising out of damage to the property of others). Although the Oil and Gas Endorsement expands the type of damages covered under the policy, nothing in it purports to extend first-party coverage, notwithstanding the Court's prior concerns.

To start, the Endorsement only modifies the commercial general liability coverage in part; it provides that "[a]ll other terms conditions and exclusions [in the main policy] remain unchanged." Here, only three portions of the Endorsement could potentially provide coverage for a well-repair: (1) Section II, which includes coverage within the limits of insurance for an "Underground Resources Hazard"; (2) Section III, which provides up to $100,000 in coverage for an "Underground Equipment Hazard"; and (3) Section IV, which provides blow-out and cratering coverage to property "on or above the surface of the earth caused by the blow-out . . . of any well," within the limits of insurance. As an initial matter, it's unclear whether Finger Oil's well-repair claim relates to damages to the land itself. If so, Sections II and IV might be applicable. But if Finger Oil suffered damage to its drilling or well-servicing machinery, as Mid-Continent urges occurred here, then Finger Oil might invoke Section III. Regardless, nothing in any of the aforementioned sections purports to broaden coverage to damages to *an insured's* land

---

[5] Although the Fifth Circuit in *Eagle Water* interpreted such an exclusion under Louisiana law, courts have interpreted owned-property exclusions similarly under Texas law. *See, e.g*., *Am. States Ins. Co. v. Hanson Indus*., 873 F. Supp. 17, 24 (S.D. Tex. 1995).

or equipment. *See Mesa Operating Co. v. California Union Ins. Co*., 986 S.W.2d 749, 754 (Tex. App.—Dallas 1999, pet. denied) ("[A]n endorsement cannot be read apart from the main policy, and the added provisions will only supersede the previous policy terms to the extent they are truly in conflict").

To the extent Finger Oil's claim relates to an "Underground Equipment Hazard" such a claim only includes damages to a drilling or well servicing machinery or equipment . . . in which [Finger Oil] ha[s] a legal liability." *See* Endorsement, VI.D. Accordingly, the repair of Finger Oil's *own* well-equipment is expressly excluded from the definition of Underground Equipment Hazard. To the extent there is any question on the matter, the Endorsement goes on to unambiguously exclude *only* Exclusion j. (4) under Section I - Coverages, Coverage A. "Bodily Injury" and "Property Damage" from the definition while also providing that "[a]ll other terms conditions and exclusions remain unchanged." Nowhere in the Endorsement does it purport to modify, change, or delete Exclusion j.(1). Accordingly, no conflict exists between the Endorsement's coverage of an "Underground Equipment Hazard" and Exclusion j.(1) in the main policy. *See, e.g*., *CBX Res., LLC Ace Am. Ins. Co*., 282 F. Supp. 3d 948 (W.D. Tex. 2017) (endorsement adding coverage for an underground resources and underground equipment hazard didn't conflict with main policy's exclusion in paragraph j(5) where the endorsement "clearly and explicitly" stated that it was only replacing paragraph j(4)'s exclusion).

The same is true to the extent Finger Oil's well-repair claim relates to damage to the land itself caused by the blow out. Nothing in Sections II or IV of the Endorsement either explicitly or implicitly supersedes the policy's general liability coverage or exclusion j(1). *See Mesa Operating,* 986 S.W.2d at 754. Previously, the Court expressed concerns that applying exclusion j.(1) from the main policy might undermine most of the coverage provided by the Endorsement.

And, in doing so, the Court relied on *Mid-Continent Casualty Company v. Bay Rock Operating Company,* 614 F.3d 105 (5th Cir. 2010), which involved identical endorsement language. But unlike the present case, *Bay Rock* concerned third-party liability coverage. In other words, Midcontinent, as Bay Rock's insurer, didn't seek to avoid coverage for repairs Bay Rock incurred at its own well. The case instead concerned whether Bay Rock was legally obligated to pay costs incurred from a blowout of a well Bay Rock didn't own. *See Mid-Continent Cas. Co. v. Bay Rock Op. Co.*, No. SA-07-CA-274-OG, 2009 WL 5341825, at * 6 (W.D. Tex. Sept. 30, 2009) *aff'd*, 614 F.3d 105 (5th Cir. 2010) ("It is undisputed that Bay Rock had no working interest in the well, and did not incur the blowout expenses."). Unlike *Bay Rock*, there is here no potential for an irreconcilable conflict between the Endorsement and the main policy. The Endorsement benefits Finger Oil by providing well clean-up and repair-costs in situations such as what occurred in *Bay Rock*—where Finger Oil failed to properly conduct drilling operations on *another entity's well*. No such claim for liability coverage is presented in this case. Rather, Finger Oil seeks to recover its own expenses—expenses Finger Oil has no legal obligation to pay. Accordingly, the Court reconsiders its Summary Judgment Order to grant judgment as a matter of law on the entirety of Finger Oil's breach of contract claim.

**B.     Summary Judgment is Granted on Finger Oil's Negligence Claim.**

In its Original Petition, Finger Oil alleges that Mid-Continent was "negligent in determining coverage under the policy in question." Orig. Pet. Orig. Pet. § VI. But as the Court previously observed, there's no independent cause of action against an insurer for negligent handling of claims. *See* Dkt. No.45 at 12 (citing *Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 352 (5th Cir. 2001) & *Zimmerman v. Travelers Lloyds of Tex. Ins. Co.*,

No. 5:15-CV-325, 2015 WL 3971415, at *5 (W.D. Tex. Jun. 30, 2015)). Nevertheless, because the Court raised this issue *sua sponte*, it provided Finger Oil an opportunity to brief the issue.

Finger Oil doesn't argue in its supplemental briefing that a claim for negligence claim handling is viable under Texas law. Instead, Finger Oil argues that Mid-Continent misrepresented the policy's coverage when Finger Oil purchased it. *See* Dkt. No. 60 ("Finger would demonstrate that Finger's position with regard to the negligence claim is that it involves negligent misrepresentation of insurance coverage, not negligent claims handling."). But no such allegations are raised in Finger Oil's live pleading. And, to the extent Finger Oil's negligent misrepresentation claims mirror its fraud-based claims, there's no evidence that Mid-Continent made any actionable misrepresentations to Finger Oil in the claims handling process. *See* Dkt. No. 45 at 7-8; Section C *infra*. Accordingly, summary judgment is granted on Finger Oil's negligence claim. *See Ross v. Univ. of Tex. at San Antonio*, 139 F.3d 521, 527 (5th Cir. 1998) ("The district court is empowered to enter summary judgment sua sponte, provided the parties are provided with reasonable notice and an opportunity to present argument opposing the judgment.").

### C.     Finger Oil's Motion to Reconsider the Court's Grant of Summary Judgment on its Fraud-Based Claims is Denied.

Finger Oil hasn't presented any basis for the Court to reconsider the portion of the Summary Judgment Order dismissing Finger Oil's DTPA and Chapter 41 claims. To start, Finger Oil's Original Petition fails to comply with Rule 9(b). Specifically, the Petition doesn't specify when Mid-Continent made the alleged misrepresentation or why it was false. Rather, Finger Oil generally alleges that it contacted Scrimger—a commercial lines account manager with *Marsh*— on some unspecified date "prior to commencing any work on the well" who advised Finger Oil that "blowout and cratering" was included within the limits of insurance. *See*

Orig. Pet. ¶ III (Dkt. No. 1-5 at 3). Such allegations, without more, fail to comport with Rule 9(b). *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."). Even if Finger Oil's Original Petition complied with Rule 9(b), as Finger Oil contends, dismissal would still be, and is, appropriate for failure to comply with a Court order. *See* Fed. R. Civ. P. 16(f) (permitting a Court on motion or on its own to issue any "just orders," including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney fails to obey a pretrial order); Fed. R. Civ. P. 41(b)).

Putting aside Finger Oil's pleading deficiencies and failure to comply with a Court order, Finger Oil fails to point to any genuine issue of material fact suggesting that Scrimger and Scheve's *general* claims of coverage are actionable.[6] Instead, Finger Oil expresses the unsupported belief that Mid-Continent had a duty to disclose all policy exclusions under these circumstances. *See* Dkt. No. 53 at 2 ("I think it is clear in Texas that when an insured makes an inquiry of the insurance company about coverage . . . the insurance company is obligated [to speak to avoid a false impression]."). As the Court previously observed:

> [N]either Scrimger or Scheve's recitation of the policy's general terms implied that Finger Oil's particular loss was fully covered or otherwise sufficiently conveyed a false impression to warrant imposition of a duty to disclose. There's no evidence that Finger Oil asked for an evaluation of its specific situation or that one was provided in response to any such inquiry.

---

[6] *Cf. Atl. Cas. Ins. Co. v. PrimeLending*, No. 3:15-CV-1475-D, 2017 WL 951878, at *5 (N.D. Tex. Mar. 10, 2017) ("General claims by the insurer of the adequacy or sufficiency of coverage, for instance, are not generally actionable. But where an insurer or agent does more than represent that a policy provides full coverage—such as representing that coverage exists in a specific situation—the insurer or agent may be liable for a misrepresentation under the DTPA.") (quotations and brackets omitted).

Dkt. No. 45 at 8. Finger Oil hasn't persuaded the Court to reconsider that portion of its analysis.

**Conclusion**

For the reasons discussed above, Mid-Continent's Motion, Dkt. No. 51, is **GRANTED** and Finger Oil's Motion, Dkt. No. 53, is **DENIED**. The Court's October 20, 2021, Summary Judgment Order, Dkt. No. 45, is **MODIFIED** to grant Mid-Continent summary judgment on Finger Oil's remaining breach-of-contract claim, which is premised on Mid-Continent's failure to pay costs and expenses for the repair of Finger Oil's well. Judgment as a matter of law is similarly granted on Finger Oil's negligence claim. All other portions of the Summary Judgment Order are re-affirmed. A separate take-nothing final judgment shall issue.

**IT IS SO ORDERED**.

SIGNED this 27th day of April, 2022.

RICHARD B.  FARRER
UNITED STATES MAGISTRATE JUDGE